IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRAY JIBRIL MURRAY, :
      Plaintiff, : 1:17-cv-1637
:
v. : Hon. John E. Jones III
:
SECRETARY JOHN E. WETZEL, :
*et al.*, :
      Defendants. :

## MEMORANDUM AND ORDER

### April 11, 2018

On September 12, 2017, Bray Jibril Murray ("Murray" or "Plaintiff"), a state inmate presently incarcerated at the State Correctional Institution at Dallas, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983, accompanied by a motion for a preliminary injunction and temporary restraining order. (Docs. 1, 3, 4). The subject of this Memorandum is Murray's motion (Doc. 3) for a preliminary injunction and temporary restraining order.

**I.**    **Allegations of the Complaint**

Murray alleges as follows:

> I am a NON-SMOKER who have NEVER consumed any kind of tobacco products. On 8/30/2016, I arrived to SCI-DALLAS, and was immediately placed in the Restricted Housing Unit (RHU); where it absolutely prohibit [sic] inmates to purchase, possess and consume any sort of tobacco products. On 9/22/2016, I was released into the general population of SCI-DALLAS; where inmates and staff are

> allowed to purchase, possess and consume/use smoking tobacco products. There is no NON-SMOKING housing unit in SCI-DALLAS. Nor is there a housing unit, where it is absolutely prohibited for inmates to purchase, possess and consume/use SMOKING TOBACCO products.
>
> On 9/22/2017 [sic] I was placed on F-unit, where it houses approx. 200 inmates, because 88 of the 100 cells on unit are occupied by two inmates at all times. Moreover, the complete absence of video recording cameras on housing units allows inmates and staff to freely and openly use smoking tobacco products (all day and night) anywhere in the housing units, with impunity.
>
> Consequently, as soon as I enters F-unit (as a resident) I was exposed (every day and night) to extraordinarily high levels of SECOND-HAND SMOKE. During the months October 2016 and January 2017, I vigorously complained about the inordinately high levels of tobacco smoke in housing units… None of the request to staff were answered or received any response.

(Doc. 1, pp. 2-3). He further alleges that the exposure to "extraordinarily high levels of second hand tobacco smoke" is "causing mental and emotional anguish and distress, as a result of my future health being placed at grave risk and peril." (*Id.* at 3).

## II. Standard of Review

Preliminary injunctive relief is "an extraordinary remedy" that "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994)); *see also* FED. R. CIV. P. 65. "[T]o obtain a

2

preliminary injunction the moving party must show as a prerequisite (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured ... if relief is not granted.... [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974). A movant must "meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. Only if these "gateway factors" are met is the court required to consider the third and fourth factors. *Id.* at 176, 179. The court must then balance all four factors to determine, in its discretion, whether the circumstances favor injunctive relief. *Id.* at 179.

### III. Discussion

Murray seeks an Order directing Defendants to "Cease and Desist" the following conduct at SCI-Dallas: 1. The trafficking and sale of smoking an non-

3

smoke tobacco products; 2. The introduction of any type of smoking and non-smoke tobacco product by all employees and staff; and, 3. The purchase, possession and use/consumption of any type of smoking and non-smoke tobacco products. (Doc. 3, p. 1). He also seeks the removal of all smoking and non-smoke tobacco products from SCI-Dallas. (*Id.*)

### A. Likelihood of Success on the Merits

The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.' " *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989)). "Liability based on exposure to ETS requires proof of (1) exposure to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure to ETS." *Helling*, 509 U.S. at 35. The Supreme Court has observed that the adoption by a prison of an anti-smoking policy "will bear heavily on the inquiry into deliberate indifference." *Id.* at 36.

ETS claims come in two varieties, present injury and future injury. Murray emphasizes in his reply brief that he is seeking relief based on future injury. (Doc. 1, p. 4). To state a cognizable future injury claim, a plaintiff must allege that "prison officials have exposed him, with deliberate indifference, to levels of ETS

4

that pose an unreasonable risk of harm to his future health." *Atkinson v. Taylor*, 316 F.3d 257, 262 (3d Cir. 2003) (citing *Helling*, 509 U.S. 25). Specifically, a plaintiff must (1) objectively show that "he is being exposed to unreasonably high levels of ETS," contrary to contemporary standards of decency, and (2) subjectively show that prison officials are deliberately indifferent to his exposure to ETS. *Helling*, 509 U.S. at 35. To satisfy the objective element, a plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS," and that the complained risk to his health is considered "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* The objective factor considers "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* Objectively serious harm also requires an assessment of society's view of the risk; *i.e.*, whether "it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* at 36. The Court must be mindful of the circumstances surrounding plaintiff's incarceration, and whether the prison's No Smoking Policy is "administered in a way that will minimize the risk to [plaintiff] and make it impossible for him to prove that he [was] exposed to unreasonable risk with respect to his future health...." *Id.* The subjective component requires a showing of deliberate

5

indifference. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). "[A] prison official cannot be held liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

Murray argues that "[a]s the Court critically examine [sic] movant's evidence of dangerously high levels of ETS [Environmental Tobacco Smoke] in the inmate housing units of SCI-Dallas; and more significantly, also of defendants' deliberate indifference to deathly risk ETS pose to the future health of movant and non-smoking inmate population, more likely than not movant's 8th Amendment claims will survive a motion to dismiss/summary judgment by defendants." (Doc. 4, pp. 13, 14). In support of his motion, he submits a copy of the Pennsylvania Department of Corrections' ("DOC") Clean Indoor Air Act, effective September 11, 2008, vowing to provide a smoke free environment consistent with the Pennsylvania Clean Indoor Air Act, copies of his grievances, declarations from two inmates indicating that they have been "allowed by staff to freely use/consume smoking tobacco products (at any time and anywhere) in the inmate housing units," and declarations from six other inmates stating they "have been exposed to extraordinarily high levels of secondhand smoke or environmental tobacco smoke

(ETS), in the inmate housing units; because of inmates being allowed to freely use smoking tobacco in housing units; at any time and any where they please." (Docs. 7, 8). In opposition, Defendants "acknowledge that there is exposure to cigarette smoke at SCI-Dallas. However, exposure does not equal medical harm or disability." (Doc. 24, p. 3).

The information contained in Murray's grievances, and the inmates' declarations indicating exposure to "extraordinarily high levels" of ETS, falls short of what is needed to satisfy the objective component. As stated *supra*, this component requires "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Helling*, 509 U.S. at 35. Murray fails to explain the actual levels to which he is exposed *via* a scientific and statistical inquiry. Based on the failure to meet the objective component of his Eighth Amendment claim, the Court cannot conclude, at this early juncture in the proceedings, that Murray has demonstrated a "reasonable probability of success" on the merits.

B. **Irreparable Harm**

To satisfy the second factor, the moving party "must demonstrate ... the probability of irreparable harm if relief is not granted." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (internal

7

quotations omitted). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The moving party must demonstrate that it is likely to suffer "actual or imminent harm which cannot otherwise be compensated by money damages," or it "fail[s] to sustain its substantial burden of showing irreparable harm." *Frank's GMC*, 847 F.2d at 103. The mere risk of injury is insufficient. The moving party must establish that the harm is imminent and probable. *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997). Additionally, "a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of immediate irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Murray's claim is rooted in future harm, not actual or imminent harm. Further, the motion is devoid of evidence that he will suffer immediate irreparable harm if relief in the form of an injunction is not granted.

**IV. Conclusion**

Although the Court fully appreciates that Murray's motivation in seeking preliminary relief is borne out of his compelling concern with the alleged ongoing

exposure to extraordinarily high levels ETS, his inability to meet the two most critical factors for preliminary injunctive relief warrants denial of his motion. We hasten to add that this decision is limited to the request for preliminary relief which, by its nature, is made on an abbreviated record and prior to the benefit of any discovery. It is in no way intended to intimate any opinion on the ultimate merits of Murray's case.

NOW THEREFORE, upon consideration of Plaintiff's motion (Doc. 3) for preliminary injunction, and for the reasons set forth above, it is hereby ORDERED that the motion (Doc. 3) is DENIED.

s/ John E. Jones III  
John E. Jones III  
United States District Judge