IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRAY JIBRIL MURRAY, : Civil No. 1:17-cv-1637
:
    Plaintiff : (Judge Mariani)
:
v. :
:
SECRETARY JOHN E. WETZEL, *et al.*, :
:
    Defendants :

## MEMORANDUM

Plaintiff Bray Jibril Murray has been litigating this Section 1983[1] action since September 2017. The gravamen of his case involves unwilling exposure to environmental tobacco smoke (ETS) while incarcerated at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas). In March 2021, the Court[2] granted Defendants' motions for summary judgment and closed this case. Shortly thereafter, Murray moved to alter or amend judgment under Federal Rule of Civil Procedure 59(e). That motion is now ripe for disposition. For the reasons set forth below, the Court is constrained to grant Murray's Rule 59(e) motion.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] This case was previously assigned to the Honorable John E. Jones III. It was transferred to the undersigned following Judge Jones' retirement from the federal bench on August 1, 2021.

I.  **Background**

The relevant facts of this case were fully set forth in the Court's March 29, 2021 memorandum opinion (hereinafter "March 29 opinion") addressing Defendants' motions for summary judgment. (*See* Doc. 163 at 5-18). It is not necessary to repeat that detailed factual recitation, and instead the Court will incorporate it herein by reference. When required, additional facts with citations to the record will be provided.

In the March 29 opinion, the Court determined that judgment must be granted in favor of defendant Loretta DeBoer, CRNP (DeBoer) insofar as Murray had failed to exhaust his administrative remedies for the relief sought in his Section 1983 action against her. (*See id.* at 21). The Court also found that summary judgment for DeBoer was proper because Murray had failed to proffer evidence that DeBoer was deliberately indifferent to Murray's medical needs, as required for his Eighth Amendment claim. (*Id.* at 21-23).

The Court then addressed the motion for summary judgment by the remaining Pennsylvania Department of Corrections (DOC) defendants: Secretary John E. Wetzel (Secretary Wetzel), Superintendent Lawrence Mahally (Superintendent Mahally), Deputy Superintendent Joseph Zakarauska (Zakarauska), Deputy Superintendent Norm Demming (Demming), Unit Manager Jasen Bohinski (Bohinski), Major Lori White (White), Program Manager Michael Goyne (Goyne), George Miller (Miller), and James Marsico (Marsico),

(collectively, "DOC defendants").³ The Court granted summary judgment in the DOC defendants' favor on Murray's Eighth Amendment claims related to present and future injury from involuntary ETS exposure. (*Id.* at 24-30). First, the Court determined that—as to Murray's present injury claim—Murray had failed to establish that "he suffers [from] a sufficiently serious medical need related to ETS exposure." (*Id.* at 24-27).

The Court then analyzed Murray's future injury claim. (*Id.* at 27-30). It laid out the supporting evidence that Murray had provided, including Murray's "own declaration and numerous declarations from smoking and non-smoking inmates who, at some point during the relevant time frame, were also housed" at SCI Dallas. (*Id.* at 27). Those declarations repeatedly averred that the inmates had been "allowed by staff to freely use/consume tobacco products (at any time and anywhere) in the inmate housing units." (*Id.*). The Court then rested its decision to grant summary judgment in favor of the DOC defendants on one basis: Murray's evidence of ETS exposure, which primarily consisted of affidavits from other inmates, did not establish that Murray himself was actually exposed to unreasonably high levels of ETS. (*Id.* at 29-30). The Court reasoned that "none of the smokers declare that they regularly smoked in Murray's presence or that they were housed on the same unit or block as Murray. Nor did any of them share a cell with Murray." (*Id.* at 29).

---

³ All ranks are those held by the DOC defendants at the time of the original and supplemental complaints.

Within the time allotted by Rule 59(e), Murray moved to alter or amend judgment. (Doc. 166). In support of his motion, he produces two new affidavits from SCI Dallas inmates who aver that they directly exposed Murray to substantial secondhand ETS for a considerable period of time. Murray contends that this evidence was not previously available to him and provides sufficient factual support to survive the DOC defendants' Rule 56 motion.

## II. Legal Standard

A motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) must rely on at least one of the following grounds: (1) an intervening change in controlling law; (2) availability of new evidence; or (3) the need to correct clear error of law or fact or to prevent "manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)); *see Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677-78 (3d Cir. 1999); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A party may not invoke Rule 59(e) to "relitigate old matters" or present previously available arguments or evidence. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted); 9C CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE §§ 2582, 2810.1 (3d ed. 2018).

## III. Discussion

Murray's Section 1983 action involves Eighth Amendment ETS exposure claims against the DOC defendants and deliberate indifference to medical needs against DeBoer.

4

In his Rule 59(e) motion, Murray does not challenge the Court's conclusion as to his Eighth Amendment claim against DeBoer. Rather, his motion and new evidence relate only to the issue of showing that Murray himself was exposed to unreasonably high levels of ETS. The Court, therefore, will confine its discussion to Murray's present and future injury claims against the DOC defendants.

### A. Eighth Amendment ETS Exposure Claims

It is well established that a prisoner can bring a claim under the Eighth Amendment for exposure "to levels of ETS that pose an unreasonable risk of serious damage" to the inmate's health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Atkinson v. Taylor*, 316 F.3d 257, 262 (3d Cir. 2003). Such a claim can sound in either present or future injury. *See Atkinson*, 316 F.3d at 262-66. To be successful on a "present injury" claim, an inmate must show "(1) a sufficiently serious medical need related to the ETS exposure and (2) deliberate indifference by prison authorities." *Spellman v. Sec. Pa. Dep't of Corr.*, 751 F. App'x 251, 253 (3d Cir. 2018) (nonprecedential) (citing *Atkinson*, 316 F.3d at 266). To establish a "future injury" claim, the prisoner must prove that (1) the inmate himself has been exposed to unreasonably high levels of ETS and "society considers th[is] risk . . . to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly" to it; and (2)

prison officials were deliberately indifferent to the serious risk of harm. *Id.* at 262 (quoting *Helling*, 509 U.S. at 36).[4]

### 1. Present Injury Claim

Murray does not specify whether he seeks reconsideration of both his present and future injury claims, or just the future injury claim. Nevertheless, his Rule 59(e) motion gives occasion to review both. In its March 29 opinion, the Court found that, as a matter of law, Murray had failed to demonstrate a "sufficiently serious" medical need related to ETS exposure. (Doc. 163 at 24). The Court reached this conclusion despite finding that Murray was diagnosed with "allergic rhinitis . . . from smoke exposure triggering mucus production"; suffered from "constant heavy mucus/sputum build up in [his] chest area and nostrils," "difficulty breathing during exertion," "mucus build-up in his nose, throat, chest and lungs," post-nasal drip and cough, and "mild hypertrophy" and "congestion" in his nose; and that he repeatedly treated for these conditions (including having a chest X-ray and bloodwork performed). (*See id.* at 25-26).

Upon reconsideration under Rule 59(e), the Court finds such a conclusion—without citation to any authority—to be clear legal error requiring correction. Murray's documented symptoms, treatment, and diagnoses are similar to, if not more severe than, other cases

---

[4] The DOC defendants make no assertion that, as to the contemporary-standards-of-decency portion of the first prong of a future injury claim, unwilling exposure to ETS is a risk that "today's society chooses to tolerate." *Helling*, 509 U.S. at 36. Nor could they. Such a contention is foreclosed by the current state of laws, regulations, and ordinances—including those governing the DOC—that prohibit indoor smoking. *See, e.g.*, DC-Policy 1.1.7, Clean Indoor Air Act.

within and outside this circuit that have held that the prisoner had stated a sufficiently serious medical condition related to ETS exposure. *See, e.g., Atkinson*, 316 F.3d at 268 (allegations of "nausea, inability to eat, headaches, chest pains, difficulty breathing, numbness in his limbs, teary eyes, itching, burning skin, dizziness, sore throat, coughing and production of sputum" sufficient); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (allegations of aggravation of asthma sufficient); *Oliver v. Deen*, 77 F.3d 156, 160-61 (7th Cir. 1996) (allegations of exacerbation of asthma sufficient but plaintiff failed to prove, at summary judgment, adequate severity to implicate Eighth Amendment protections); *Weaver v. Clarke*, 45 F.3d 1253, 1254, 1256 (8th Cir. 1995) (allegations of "severe headaches, dizziness, nausea, vomiting, and breathing difficulties" sufficient); *Brown v. DiGuglielmo*, 418 F. App'x 99, 102 (3d Cir. 2011) (nonprecedential) (allegations of "sinus congestion, headaches, tightness of the lungs, and difficulty breathing" sufficient); *Mearin v. Swartz*, 951 F. Supp. 2d 776, 781 (W.D. Pa. 2013) (allegations of "coughs, headaches, chest pains, shortness of breath, vomiting, and fatigue" sufficient); *Torres v. Beard*, No. 08-cv-200, 2009 WL 1684682, at *1, *7 (W.D. Pa. June 16, 2009) (allegation of exacerbation of asthma sufficient).

Moreover, this Court must heed the Third Circuit's admonition that, when a confined prisoner is constantly and involuntarily exposed to secondhand ETS, "[certain] symptoms may transform what would otherwise be a passing annoyance into a serious ongoing medical need." *Atkinson*, 316 F.3d at 268. Consequently, the conclusion in the March 29

opinion that Murray failed, as a matter of law, to demonstrate a sufficiently serious ETS-related medical condition was clear legal error. Murray's present injury claim is not deficient in this regard.

### 2. Future Injury Claim

The March 29 opinion granted summary judgment to the DOC defendants on the future injury claim based on a perceived lack of evidence that Murray himself was exposed to unreasonably high levels of ETS. As part of his Rule 59(e) motion, Murray submitted two additional affidavits from inmates who were housed in the same area of SCI Dallas as Murray during times relevant to this lawsuit. (*See* Doc. 167-1). Those affidavits, which Murray contends were previously unavailable to him, set forth in explicit detail how the affiants and other inmates exposed Murray to significant ETS for several years. (*See id.*). The DOC defendants counter that Murray could have obtained this evidence earlier, and thus he cannot meet the stringent Rule 59(e) requirements to alter or amend judgment.

The Court need not determine whether Murray's additional affidavits satisfy the preconditions for Rule 59(e) relief. That is because the record is already replete with competent evidence that supports Murray's claims of substantial exposure to ETS, not the least of which is Murray's own sworn declaration describing daily and pervasive ETS exposure at SCI Dallas. (*See* Doc. 156-1 at 195-96). Murray's affidavit, consisting of sworn statements reflecting personal knowledge of his conditions of confinement (and about which

8

he is obviously "competent to testify"), is more than sufficient to establish a genuine dispute of material fact on this issue. *See* FED. R. CIV. P. 56(c)(1)(A), (4).

But there is more. The Rule 56 record also contains copies of Murray's administrative grievances and Form DC-135A requests to staff, wherein he repeatedly complained to SCI Dallas officials about his extensive, daily ETS exposure. (*See* Doc.156-1 at 87-93, 132-36). Murray likewise produced copies of his correspondence to the Pennsylvania General Assembly (with carbon copies to Secretary Wetzel, the ACLU of Pennsylvania, and the Pennsylvania Prison Society), wherein he expressed serious concerns about his significant ETS exposure at SCI Dallas. (*Id.* at 83).[5] And in his deposition, Murray repeatedly maintained that he was exposed to significant ETS and poor ventilation at SCI Dallas, despite numerous complaints to correctional staff and supervisors. (*See id.* at 46-52, 62-77, 80-81).

Finally, the Court would be remiss to simply ignore the affidavits that Murray collected from over *two dozen* SCI Dallas inmates. (*See id.* at 95-117, 119-30). It is true, as the March 29 opinion notes, that none of these affidavits specifically state that the affiant directly exposed Murray to ETS. (*See* Doc. 163 at 29). Yet that is beside the point,

---

[5] Even if the DOC defendants were to raise hearsay objections to these documents and assert that they are not admissible at trial, *see* FED. R. CIV. P. 56(c)(1)(B) and (2), it is readily apparent that Murray could produce the same evidence in an admissible form through testimony of the parties involved.

because the affidavits are still competent circumstantial evidence that Murray's claims of pervasive ETS exposure in the SCI Dallas housing units are credible.[6]

The Court is thus constrained to conclude that the March 29 determination that Murray lacked evidence that he himself was exposed to unreasonably high levels of ETS is clear factual error. Even without the new affidavits, the evidence Murray provided at the Rule 56 stage is more than sufficient to meet his burden on the issue of personal exposure to ETS. Thus, the Court must grant Murray's Rule 59(e) motion as to his future injury claim in this regard.[7]

### B. DOC Defendants' Additional Rule 56 Claim

The March 29 opinion did not address every argument for summary judgment raised by the DOC defendants. However, because Murray's Rule 59(e) motion must be granted, the Court now turns to the DOC defendants' remaining Rule 56 contention: that judgment

---

[6] The Court further observes that Defendants themselves have admitted that, at least at the time when Murray filed this lawsuit, "there [was] exposure to cigarette smoke at SCI-Dallas." (Doc. 24 at 3).

[7] The DOC defendants also argue that because SCI Dallas stopped selling tobacco products and officially became a "smoke-free" facility on July 1, 2019, Murray's future injury claim must fail. (Doc. 140 at 7-8). This argument is meritless. First, it is contrary to the law concerning future injury claims. Just because an inmate's exposure to unreasonably high levels of ETS has ended does not necessarily mean that the prisoner no longer faces a threat of future injury. See Helling, 509 U.S. at 34-35 (concluding that prisoner could pursue a future injury claim where he could establish that "the level of ETS to which he ha[d] been involuntarily exposed is such that his future health is unreasonably endangered"); Atkinson, 316 F.3d at 265 (explaining that, because plaintiff had been housed with "constant" smokers for over seven months, he could establish the first element of a future injury claim). Second, Murray's sworn declaration, as well as other inmates' declarations, indicate that smoking in the SCI Dallas housing units continued unabated even after the July 1, 2019 policy change. (See Doc. 156-1 at 196 (Murray declaration); id. at 96-97, 112-13, 128-29 (other inmates' declarations)).

10

Case 1:17-cv-01637-RDM-MP   Document 178   Filed 11/23/21   Page 11 of 17

must be granted in their favor because Murray failed to show personal involvement, as required for an Eighth Amendment claim. (*See* Doc. 140 at 10-13).

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context). Rather, a Section 1983 plaintiff must establish facts that demonstrate the defendant's "personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence." *Id.* (quoting *Rode*, 845 F.2d at 1207).

Likewise, a supervisory defendant in a Section 1983 action cannot be held liable on a theory of *respondeat superior*. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (citation omitted). Supervisory liability will attach in only one of two ways: (1) when a supervisor "established and maintained a policy, practice, or custom which directly caused the constitutional harm," or (2) when the supervisor either participated in or directed the alleged violation, or "had knowledge of and acquiesced in their subordinates' violations." *Id.* (quoting *Santiago v. Warminster Township*, 629 F.3d 121, 129 & n.5 (3d Cir. 2010)).

Of the nine DOC defendants, it appears that only two can be granted summary judgment based on the existing Rule 56 record. According to Murray, the extent of

11

Marsico's culpable conduct was that he acknowledged receipt of Murray's DC-135A request regarding ETS exposure but deferred to Bohinski—a superior—on the issue. (*See* Doc. 79 at 7). Not only does Murray fail to support these allegations with evidence, but even if he did supply such evidence, it would not be enough to demonstrate deliberate indifference on Marsico's behalf. Murray likewise fails to offer evidence to support his claim that Miller ignored a DC-135A request, thus compelling the Court to grant summary judgment in Miller's favor. *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (at summary judgment, non-movant cannot "rest upon the mere allegations" of his pleadings, but instead "must set forth specific facts showing that there is a genuine issue for trial" (citation omitted)).

As for the seven other DOC defendants, Murray has proffered sufficient evidence of personal involvement and deliberate indifference to survive their motion for summary judgment. Primarily, Murray has adduced evidence that these officials—whether involved in the day-to-day management at SCI Dallas or acting in a supervisory capacity—knew of the alleged constitutional violation and failed to act.

From September 2016 to January 2017, Murray made express DC-135A requests to Bohinski, White, Demming, Zakarauska, and Goyne seeking relief from his daily secondhand exposure to ETS. (*See* Doc. 156-1 at 132-36). Murray asserts that none of these defendants took any action to address his complaints, a claim that the DOC defendants do not refute. Additionally, Murray identified these same five defendants in

12

grievance # 668355, which he filed on March 3, 2017. (*Id.* at 87-88). In that grievance, Murray explained that these officials had not responded to his requests, and once again asked that actions be taken to mitigate his ETS exposure. (*Id.*). Murray even explicitly warned that such involuntary ETS exposure was a clear violation of his Eighth Amendment rights. (*Id.*). This grievance and its appeals were perfunctorily denied. (*See id.* at 89, 91, 93).

As just one example of inadequacy of the grievance system's treatment of Murray's constitutional claim, the final rejection from the Secretary's Office of Inmate Grievances and Appeals states, "The record reflects that [the initial grievance officer] adequately addressed your issue by stating that all buildings have a sign to indicate if it is a non-smoking building. Staff are aware of the policy and misconducts will be issued to anyone found to be smoking in a non-smoking area. It is suggested that if you see someone smoking in a non-smoking area, *you notify staff*." (*Id.* at 93 (emphasis added)). This conclusion merely returns full circle to Murray's prior DC-135A staff-member requests, in which he attempted to do exactly what was "suggested" in the final denial of his administrative grievance.

In sum, Murray has proffered competent evidence that Bohinski, White, Demming, Zakarauska, and Goyne knew of the purported constitutional violation and took no action to stop it. Not only does this evidence show personal involvement by these DOC defendants, but it also supports Murray's claim of deliberate indifference, as required for the second

13

element of his ETS exposure claims.[8] Doing nothing when presented with an Eighth Amendment violation is the essence of deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that deliberate indifference is shown when "the official knows of and disregards an excessive risk to inmate health or safety"); *Atkinson*, 316 F.3d at 269 ("Atkinson has produced evidence that after telling prison officials about his sensitivity to ETS no change was made in housing conditions. This evidence demonstrates deliberate indifference on the part of prison officials."); *cf. Spellman*, 751 F. App'x 253 n.4 (finding prisoner had not established deliberate indifference because DOC defendants had issued citations for violations of no-smoking policy, permitted plaintiff to change cells twice to accommodate his complaints, and performed multiple air-ventilation tests to "ensure adequate airflow" in his cell).

    Murray also provides sufficient evidence to support his Eighth Amendment claims against Superintendent Mahally. Superintendent Mahally—who, beyond being the Superintendent of SCI Dallas, was also designated the "Facility Manager," (*see* Doc. 156-1 at 91)—was made aware of Murray's ETS exposure but apparently took no corrective action. Following Murray's February 2017 letter to the Pennsylvania General Assembly about the extensive ETS exposure at SCI Dallas, (*id.* at 83), Superintendent Mahally was carbon copied on the DOC's March 2017 response, (*id.* at 85). That response indicated that

---

[8] As Superintendent Mahally explained in his interrogatory answers, "All Staff are responsible for enforcing the [no-smoking] policy." (Doc. 156-1 at 15).

DC-Policy 1.1.7 (the Clean Indoor Air Act), prohibited smoking in all DOC buildings and that inmate and staff violations should be addressed according to DOC policy. (*Id.*).

Superintendent Mahally further admitted in his interrogatory responses that he "tour[s] the units on a weekly basis," which would provide first-hand knowledge of the smoking in the housing units as attested to by Murray and dozens of other inmates. (*See id.* at 16).[9] At no time does Superintendent Mahally indicate that he took any action in response to being informed about Murray's ETF exposure. Like in *Atkinson*, Murray's Eighth Amendment claims against Superintendent Mahally survive the Rule 56 challenge because Murray has proffered evidence of Superintendent Mahally's knowledge and acquiescence in the alleged Eighth Amendment violation. *See Atkinson*, 316 F.3d at 259 n.1, 260, 269 (finding prisoner's ETS claims could proceed against, *inter alia*, warden and Commissioner of the Delaware Department of Correction because deliberate indifference was shown through those officials' failure to act on inmate's letters to them about involuntary ETS exposure).

Finally, the Court concludes that Murray has adequately supported his constitutional tort claims against Secretary Wetzel. As explained above, Murray wrote to state representatives in February 2017 about his ongoing ETS exposure at SCI Dallas. A copy of that letter was sent directly to Secretary Wetzel. (*See* Doc. 156-1 at 83). A staff member

---

[9] Of course, Superintendent Mahally would be free to either concede or rebut Murray's evidence regarding the alleged conditions of confinement at SCI Dallas during the time in question.

15

from Secretary Wetzel's office replied to Murray, explaining how smoking violations in DOC buildings should be handled and recommending that he continue to pursue his administrative grievance about the issue. (*Id.* at 85). Secretary Wetzel does not deny receiving this correspondence; rather, he contends that he relies on staff "to respond to questions from inmates."[10] (*Id.* at 11). Secretary Wetzel further conceded that he is familiar with DC-Policy 1.1.7, and that he is "generally aware that smoking tobacco may be detrimental to a person's health, which may ultimately lead to death." (*Id.* at 7). Nevertheless, Murray avers that he continued to be exposed to constant and pervasive ETS for *years* following this 2017 correspondence.

Unlike a generic claim against a high-level official alleging mere *respondeat superior*, Murray has adduced evidence that Secretary Wetzel had actual knowledge of purported violations at SCI Dallas of the Clean Indoor Air Act and Murray's Eighth Amendment rights but did nothing to mitigate the ETS exposure. This evidence is sufficient to show personal involvement and creates a genuine dispute of material fact as to Secretary Wetzel's deliberate indifference. *See Atkinson*, 316 F.3d at 259 n.1, 260, 269 (finding prisoner's ETS claims could proceed against, *inter alia*, warden and Commissioner of the Delaware Department of Correction because deliberate indifference was shown through those

---

[10] Murray's correspondence to the General Assembly can hardly be characterized as a "question" from an inmate. In his typewritten plea for assistance from the state legislature, Murray sets forth his grave health concerns related to ETS exposure, the constitutional provisions and relevant case law implicated by his conditions of confinement, and the specific DOC policy purportedly being violated. (*See* Doc. 156-1 at 83).

16

officials' failure to act on inmate's letters to them about involuntary ETS exposure). Consequently, Murray's Eighth Amendment ETS claims against Secretary Wetzel may proceed.

## IV. Conclusion

For the foregoing reasons, the Court will grant Murray's motion (Doc. 166) to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: November 23, 2021